CITY NATIONAL BANK, OF FORT WORTH, v. MERCHANTS
NATIONAL BANK ET AL.

No. 1480.

1. **Assignment for Benefit of Creditors—Instruments Construed Together.** Where several interdependent deeds of trust conveying title to all his property subject to execution are executed by an insolvent debtor about the same time, and as parts of the same transaction, for the benefit of certain specified creditors, the surplus, if any, to be distributed among all other creditors holding legal claims, the deeds constitute a general assignment.

2. **Same—Fraud Does Not Vitiate.**—Where the transaction in fact constitutes an assignment under the statute, fraud on the part of the assignor or assignee will not vitiate it or affect its character.

3. **Same—Exempt Property.**—A lot belonging to the insolvent debtor, alleged to be exempt as a business homestead, if not in fact so exempt, passes by a general assignment, whether it is mentioned therein or not.

4. **Attachment of Property in Custodia Legis.**—Where an application for a receiver of an insolvent debtor's property has been made to a court, and a temporary

injunction has been issued to restrain a disposition thereof, such property can not be lawfully seized under an attachment issued out of another court.

APPEAL from Tarrant.    Tried below before Hon. W. D. HARRIS.

*Ball, Tempel & Ball,* for appellant.—1. The instruments in controversy in this suit were not a general assignment under the statute, and the court erred in so holding; but the same were null and void, because in contravention of the statute of frauds, and appellant was entitled to recover the property described in its plea of intervention.

On condition of defeasance: Bank v. Lovenberg, 63 Texas, 506; Jackson v. Harby, 65 Texas, 710; Watterman v. Silberberg, 67 Texas, 104; Scott v. McDaniel, 67 Texas, 315; Johnson v. Robinson, 68 Texas, 399.

On right to show real character of instruments: Carter v. Carter, 5 Texas, 93; Fowler v. Stoneum, 11 Texas, 478; Hudson v. Wilkinson, 45 Texas, 452; Hardie v. Campbell, 63 Texas, 292; Johnson v. Robinson, 68 Texas, 399; Gray v. Shelby, 83 Texas, 405.

That instruments were not general assignment under the statute: Rev. Stats., art. 65a; La Belle v. Tidball, 59 Texas, 291; Johnson v. Robinson, 68 Texas, 399; Hart v. Blum, 76 Texas, 113; Blum v. Welborn, 58 Texas, 161; Donoho v. Fish Bros., 58 Texas, 167; Foreman v. Burnette, 83 Texas, 396; McCart v. Maddox, 68 Texas, 456; Fant v. Elsbury, 68 Texas, 1; Coffin v. Douglas, 61 Texas, 406.

2. Appellant had a specific lien on the funds in the hands of the receiver, which entitled it to preference and priority over the other creditors of Lake; and therefore entitled it to have its judgment first satisfied out of said funds.

On specific lien of execution creditor: Taylor v. Gillean, 23 Texas, 508; Johnson v. Heidenheimer, 65 Texas, 263; Day v. Washburn, 65 U. S., 352; Savings and Trust Co. v. Earle, 110 U. S., 710; McDermutt v. Strong, 4 Johns. Ch. (N. Y.), 686; Bayard v. Hoffman, 4 Johns. Ch. (N. Y.), 450; Brinkerhoff v. Brown, 4 Johns. Ch. (N. Y.), 669; George v. Williamson, 26 Mo., 190; Corning v. White, 2 Paige (N. Y.), 567; Bridgman v. McKissick, 15 Iowa, 260; Gordon v. Lowell, 21 Me., 257; Lyon v. Robbins, 46 Ill., 276; Gates v. Boomer, 17 Wis., 455; Snodgrass v. Andrews, 30 Miss., 472.

Statute did not prevent preference: Rev. Stats., art. 651; Simmons v. Kaufman, 77 Texas, 131; Watterman v. Silberberg, 67 Texas, 100; Blum v. Welborne, 58 Texas, 157.

Assignee stands in same position as receiver: 1 Ct. App. C. C., sec. 1190; Verplank v. Ins. Co., 2 Paige (N. Y.), 452; Colby v. Coates, 6 Cush. (Mass.), 558; Thayer v. Tyler, 5 Allen (Mass.), 94; Freem. on Ex., sec. 129.

Appointment of receiver does not relate back: Bank v. Treadwell, 34 Barb. (N. Y.), 553; Van Alstyne v. Cook, 25 N. Y., 496; High on Receivers, sec. 108; Kerr on Receivers, p. 183; Beach on Receivers, secs. 202, 576.

3. In the acquisition of its interest in the subject matter of this suit by attachment, appellant did not act in contempt of any court, or in violation of any orders of any court; but rightfully, according to recognized rules of law. Whipple v. Hutchinson, 4 Blatchf. (U. S.), 190; Savings Bank v. Habel, 59 How. Pr., 336; Mowrer v. State, 107 Ind., 539; Dawson v. Paver, 5 Hare, 415; 10 Am. and Eng. Encyc. of Law, 1008; Attorney-General v. Railway, 4 De Gex & S., 75; Iveson v. Harris, 7 Ves., 256; 2 High on Injunc., sec. 1440; Wellesley v. Mornington, 11 Beav., 181; Rapalje on Contempts, sec. 43.

4. An assignment by an insolvent which not only does not manifest on its face an intent on the part of the assignor to make a general statutory assignment, but, on the contrary, does manifest on its face an intent on the part of the assignor not to comply with the provision of the act, can not, at least on demurrer, be held to be a general statutory assignment. Rev. Stats., art. 65a; Pessels v. Schwab, 25 S. W. Rep., 814; La Belle v. Tidball, 59 Texas, 291; Johnson v. Robinson, 68 Texas, 399; Hart v. Blum, 76 Texas, 113; Blum v. Welborne, 58 Texas, 161; Donoho v. Fish Bros., 58 Texas, 167; Foreman v. Burnette, 83 Texas, 396; McCart v. Maddox, 68 Texas, 456; Coffin v. Douglas, 61 Texas, 406; Laird v. Weiss, 85 Texas, 95.

*Wynne, McCart & Booty* and *A. M. Carter*, for appellees.—1. By the terms of the deed of trust made by Lake to Coffman, all the property therein described was to be applied first to the payment of the creditors of Lake mentioned in that instrument. The surplus was to pay the list of creditors of said Lake mentioned in said deed of trust to Ellis of July 3, 1891. The surplus proceeds of the property were to go to the payment of all of Lake's remaining creditors, share and share alike; therefore the instrument in question was an assignment. Johnson v. Robinson, 68 Texas, 399; Hart & Co. v. Blum, 76 Texas, 115; Hudson v. Milling Co., 79 Texas, 406; Preston v. Carter Bros. & Co., 80 Texas, 390; Foreman v. Burnette, 83 Texas, 396; Feicheimer v. Baum, 43 Fed. Rep., 719, citing Coggins v. Stephens, 73 Ga., 414.

2. The attachment of the property of W. F. Lake by the City National Bank two days after the Merchants National Bank had filed its petition praying for the appointment of a receiver of the property of said Lake, and the subsequent proceedings thereunder, were absolutely null and void, and conferred no title on said bank. Atlas Bank v. Nahant Bank, 23 Pick. (Mass.), 480; Hubbard v. Bank, 7 Metc. (Mass.), 340; Railway v. Lewis, 81 Texas, 1; Ellis v. Ice, Light and

Water Co., 23 S. W. Rep., 856, 858; Wiswall v. Sampson, 14 How. (U. S.), 64.

TARLTON, CHIEF JUSTICE.—The question here presented arises upon demurrer, and concerns the appellant and the appellee The Merchants National Bank of Fort Worth.

On the 6th day of July, 1891, the last named bank, for itself and other creditors of W. F. Lake similarly situated who might see proper to come into the suit, brought this action against W. F. Lake, W. H. Coffman, E. B. Harrold, Thomas Burnett, S. B. Burnett, the City National Bank of Fort Worth, Texas, and divers other defendants not necessary to be named.

The purpose of the suit was to have the court declare to be a general statutory assignment certain instruments executed by W. F. Lake to the grantees therein named, in the interest of certain preferred creditors; to enjoin these grantees from distributing the property transferred, or its proceeds, among the creditors sought to be preferred; and to have the court appoint a receiver or an assignee, whose duty it should be to take charge of all the property transferred, to be distributed by him in accordance with the provisions of the statute regulating general assignments.

The petition, to which as exhibits the several instruments in question are attached, alleged the following facts:

On July 3, 1891, the plaintiff was a creditor of W. F. Lake in the sum of $33,191.68. For six months prior to that date, Lake, who had been engaged in business as a hardware merchant, and had been speculating in real estate, was insolvent. On the day named he executed contemporaneously the following instruments, severally containing the following provisions:

1. An instrument to W. H. Coffman, transferring all merchandise of every description in four several described buildings in Fort Worth, together with all evidences of indebtedness due to the grantor. The grantee was required to take an inventory. The transfer is upon the recited trust and conditions that Coffman should take immediate possession of the property, and sell it and collect the debts, and apply the proceeds to the payment of stated indebtedness due to twenty-nine named creditors. The seventh creditor named in this list is Thomas W. Lake; and as to the indebtedness due him, $12,642.32, it is provided that, save as to one-half of that sum, payment should be postponed until the debts to the remaining named creditors should be paid in full, after which—should Thomas W. Lake have not derived the full payment from the proceeds of certain real property conveyed at the same time by the same grantor to E. B. Harrold, to secure the debt in question—the balance due should be paid by Coffman, after the satisfaction of the other named creditors. Coffman was further directed

to apply any surplus remaining after the satisfaction of the indebtedness named to the payment of certain other creditors named in an instrument executed on the same date by the same grantor to M. G. Ellis, in so far as such had not been satisfied out of property for that purpose conveyed to Ellis. Finally, this instrument directed, after the satisfaction of all indebtedness therein referred to, that Coffman should apply any balance in his hands to the satisfaction pro rata of all creditors who might present valid claims.

2. An instrument to M. G. Ellis, conveying certain described real estate. The grantee was authorized and directed to sell and convey the real estate described, and to apply the proceeds to the payment of the named indebtedness due to fifteen named creditors; including, as the second creditor in the list, the City National Bank of Fort Worth, appellant, its debt being described as "one-half of joint note of Lake and Ellis, $3527.22." Any surplus remaining in his hands after the satisfaction of the indebtedness set out in this instrument, Ellis was directed to pay to W. H. Coffman, to be applied by the latter as directed in the instrument to him executed.

3. As a part of the same transaction, an instrument to E. B. Harrold, conveying certain described real estate, reciting that the conveyance was "intended as a trust for the better securing of Thos. W. Lake" in the sum of $12,642.32.

On July 2, 1891, and July 3, 1891, respectively, Lake, insolvent and in contemplation of making a general assignment, with intent to avoid the assignment laws of Texas, and to defraud his creditors, executed, respectively, to S. B. Burnett, J. H. Mullens, and P. H. Fowler, who knew the intention of the grantor, two deeds; the deed to Burnett, acknowledged July 4, 1891, conveying 14,490 acres of land in Hockley and Swisher Counties, and the deed to Mullens and Fowler conveying certain real estate in Abilene, Texas.

In the instruments executed to Coffman and to Ellis there is no condition of defeasance, express or implied. The value of the property conveyed to Coffman is $80,000; that to Ellis, $35,000.

Within an hour after executing the instruments to Coffman and to Ellis, Lake, having abandoned as a business homestead the valuable lot described in the petition in which he had done business, conveyed that property to Thos. W. Burnett, in consideration of a note for $10,-000. If this property did not pass by the deed of assignment to Coffman and Ellis, for the benefit of the creditors of Lake, the note should be decreed to vest in the assignee for the benefit of creditors.

By instrument sought to be held to be a general assignment, Lake intended to convey, and did convey, all his property not exempt from execution under the laws of Texas.

When this petition was presented, on July 6, 1891, the Hon. N. A. Stedman, judge of the District Court, entered an order setting the ap-

plication for hearing on July 9, 1891, and requiring that notice thereof should be given to all the defendants. He entered a temporary restraining order, enjoining W. H. Coffman, M. G. Ellis, E. B. Harrold, Thos. Burnett, and W. F. Lake from proceeding under the instruments named in the petition.

On July 10, 1891, W. T. Fakes was appointed receiver of all the property formerly owned by defendant W. F. Lake, which was fully described in the plaintiffs' petition, and the defendants, including the City National Bank of Fort Worth, Texas, were ordered to deliver to the receiver all of the property of said Lake, including books of account, papers, and vouchers.

The appellant bank was, on the 8th day of July, 1891, served with a notice of the hearing of the foregoing application. It seems thereafter to have remained a party to the proceeding until December 19, 1891, when, at its own instance, on the alleged ground, in substance, "that the debt mentioned in the instrument of writing in controversy herein as being due to it has been paid off by M. G. Ellis, one of the joint makers of the debt, since the commencement of this suit, and it has therefore no further interest in the controversy as such creditor on said debt," it was dismissed from the case, without prejudice to it as a general or other creditor.

February 10, 1893, the appellant bank, having on that day obtained leave to intervene, filed its plea in intervention, alleging as follows:

That on July 8, 1891, the intervenor instituted in the District Court of Tarrant County for the Seventeenth Judicial District, against W. F. Lake, its action for debt; that it sued out a writ of attachment, which, on the same day, it caused to be levied on certain described real estate in the city of Fort Worth; that having, on November 26, 1891, obtained its judgment for the principal sum of $8140, with a foreclosure of its attachment lien, it caused the same to be duly sold by the sheriff on August ——, 1892, and itself became the purchaser on a bid of $130; that the instruments executed by Lake to Coffman, Ellis, Harrold, and Burnett, were null and void, not only on their face, but because of the following facts: Lake was, at and before the execution of the instruments, insolvent. He executed them to hinder, delay, and defraud his creditors, and not with the intent of making an assignment under the statute, which facts were known to the grantees in the instruments, and the beneficiaries. Coffman, the grantee in the first instrument, was insolvent at its date, and the clerk and employe of Lake. He took the conveyance with the secret understanding had with Lake, that he would sell the goods under the direction of the latter, and so conduct the business as to force the creditors of Lake to compromise their debts, and to enable Lake to get ultimate possession of the goods; that the deeds in trust were executed without the knowledge of the beneficiaries, and were not accepted until after the levy of

the intervenor's attachment; that the conveyance by Lake to Burnett was a nullity, because of Lake's insolvency at the date of its execution; that Burnett, a minor, with a knowledge of the insolvency of the grantor, on a simulated consideration, took the property upon the secret trust and understanding that he would hold it for the benefit of the grantor, and beyond the reach of his creditors; that therefore the instruments in question are null and void, and being lacking in all of the essential requisites of a statutory assignment, are inoperative, and that the intervenor, through the sheriff's sale referred to, acquired title to the real estate purchased by it, and is entitled to have the remainder of its debt satisfied out of the funds in the hands of the receiver; that the several instruments are clouds upon the title of the intervenor.  It prays that it have judgment for the property bought at foreclosure sale; that the several instruments described be declared null, as against intervenor's claim.  It alleges that the intervenor has exhausted all the property levied on under its attachment, and having credited the proceeds, $130, on its judgment, is yet a judgment creditor in the sum of $9234.42, principal, interest, and costs; that it caused the issuance of an execution on the —— day of ——, 1893, which has been returned, no property found.  Having exhausted all legal means for the satisfaction of its judgment, its claim being the only one reduced to judgment, with the return, no property found, intervenor is entitled to a lien upon the funds in the receiver's hands; for a recognition of which it prays.

The court sustained exceptions of the plaintiff and of W. H. Coffman, defendant, to the plea of intervention of the City National Bank, " in so far as the plea sets up title to real estate,  *  *  *  and seeks to remove cloud from title to same, and in so far as it seeks to claim the preference lien, and to adjudicate and fix same on the proceeds of property assigned;" and the City National Bank having declined to amend, and "stating in open court that it does not desire to remain in the case as a general creditor," the plea of intervention was dismissed.

Proceeding with the trial of the case as to the remaining parties, the court, on the verdict of the jury, decreed the several instruments executed to W. H. Coffman, to M. G. Ellis, and to E. B. Harrold, to be a general assignment of all the property of W. F. Lake then owned by him, except such as is exempt from forced sale; and it further appointed an assignee.

*Opinion.*—It is apparent that any right to which the appellant in this case may be entitled depends primarily upon the validity of the attachment proceedings set out in its plea of intervention.  If the several instruments in question constitute a general statutory assignment, it follows that appellant can not prevail by virtue of his attachment; for if the title to the property attached had by assignment passed from

W. F. Lake, it was not, as his property, subject to seizure, and the process could avail the appellant nothing. Watterman v. Silberberg, 67 Texas, 100.

It therefore becomes pertinent to inquire whether the instruments referred to constitute a general statutory assignment; and this question must be answered with reference to the allegations of plaintiff's petition and of intervenor's plea.

Hence, we consider whether, in the light of these pleadings, looking at the provisions of the several instruments attached as exhibits and already set out, these instruments should be interpreted as a general assignment.

To constitute a general statutory assignment, three conditions must concur: (1) the debtor or maker of the assignment must, at the date thereof, be insolvent, or in contemplation of insolvency; (2) the instrument must pass the title to the grantee, for the benefit of the assignor's creditors; (3) its effect must be to pass title to all of the grantor's property subject to execution.

In this case, and with reference to these instruments, the assignor, according to the allegations of both the parties interested, was insolvent; and the first condition is thus met.

According to the allegations of the plaintiffs' petition (not in this respect denied by the averments of the intervenor's plea), the several instruments executed by Lake were parts of the same transaction; and if the whole should be regarded as the execution of an assignment under the statute, the fact that the assignor had divided up the transaction would be immaterial. White v. Cotzhausen, 129 U. S., 329.

There was an interdependence among the several instruments executed by Lake. The instrument in form a deed of trust in favor of Harrold, and the one in favor of Ellis, were subsidiary to the purpose which prompted the execution of that to Coffman. The deed executed to S. B. Burnett was, under the averments of the petition, in contemplation of the instrument executed to Coffman, and with the intent to defraud creditors; and if this, with the other transfers, should be interpreted as an assignment under the statute, the property thus conveyed to these grantees would pass by the assignment. Sayles' Civ. Stats., art. 65i.

If, at the date of the instrument to Coffman, the property described in the pleadings of the contesting parties as the business homestead was in fact exempt, it was in no way subject to the assignment law, and its conveyance could not affect the character of the prior instruments. If it was not exempt, and the other conditions concurred to constitute the entire transaction an assignment, the property would have passed by the assignment, whether it was therein specified or not. Sayles' Civ. Stats., art. 65a.

It is averred by the plaintiff, that by these several instruments, thus constituting a single transaction, all the property of the grantor passed, and it will be noted that this averment is not denied by the allegations of the intervenor's plea; and while we find among the latter's averments, argumentatively stated, such expressions as that the instruments were made to delay, hinder, and defraud the creditors of said Lake, "and were not made with the intent of making an assignment under the statute," and that the same were lacking in all the essential requisites of a statutory assignment for that purpose, such allegations, we think, were properly regarded by the court as but the conclusions of the pleader.

If the transaction in fact constituted an assignment under the statute, fraud on the part of the assignor or assignee would not vitiate it, or affect its character.   Blum v. Welborne, 58 Texas, 157.

The instrument in favor of Coffman, to which as to a central purpose the conveyances to Ellis and Harrold are directed, passed the property absolutely, to be administered under its provisions; and after guarding the interests of the creditors sought to be preferred, reserving by expression or implication no interest in the grantor, it concludes with the direction that the grantee distribute pro rata the residue of the proceeds among all creditors presenting valid claims.   This instrument was, therefore, as assignment.   Johnson v. Robinson, 68 Texas, 399; Hudson v. Milling Co., 79 Texas, 401; Preston v. Carter Bros., 80 Texas, 390.

As its terms exclude the possibility of referring its execution to the fact that it was for the benefit of such of the "assignor's creditors only as would consent to accept their proportional share of the estate and discharge him from their respective claims (Sayles' Civil Statutes, article 65c), and as it was an "assignment made by an insolvent debtor for the benefit of his creditors," it is brought within the terms of the statute (Sayles' Civil Statutes, article 65a); which thus reprobates the preference sought to be made, and imputes to the maker an intent which he may not deny, and to the instrument an effect which he may not avoid, to pass all the assignor's estate, "whether specified or not in the assignment."   Foreman v. Burnette, 83 Texas, 396.

Again, we are of opinion that, under the pleadings of the parties, the property on which appellant's attachment was levied must, at the date of the issuance and levy of the attachment, and at the date of the judgment and of the foreclosure sale and purchase by appellant (on all of which it relies as the source of a privileged claim upon the fund in question), be regarded as having been "in custodia legis."   The levy was had upon July 8, 1891, upon a writ issued on that date, two days after the application for the appointment of a receiver, and after the issuance of a temporary injunction, and on the same date on which

notice was served upon appellant of the pendency of the application in a different court.

Pending an application in one court for the appointment of a receiver, and the assumption by that court of jurisdiction over property by the issuance of an injunction with regard thereto, to permit the seizure of property thus sequestered by a subsequent attachment issued out of another court would, it seems to us, beget complications and jurisdictional confusion which it would be against public policy to encourage. Atlas Bank v. Nahant Bank, 23 Pick. (Mass.), 480; Hubbard v. Bank, 7 Metc. (Mass.), 340. Also see Railway v. Lewis, 81 Texas, 1; Ellis v. Ice Co., 23 S. W. Rep., 856, 858; 4 Texas Civ. App., 66.

We conclude that, under the allegations of the appellant's plea, it can claim no prior right to the fund or property in controversy, and that it should have been content to share the fate of the general creditors.

The judgment is affirmed.

*Affirmed.*

Delivered June 20, 1894.

Writ of error refused by Supreme Court, November 15, 1894.